Steven K. ANGLIN, Plaintiff,

v.

SEARS, ROEBUCK AND CO. and Margaret Edidin, Defendants.

No. 93C3438.

United States District Court,
N.D. Illinois,
Eastern Division.

June 7, 2001.

Kathryn Ellen Korn, Attorney at Law, Chicago, IL, for plaintiff.

Paul Ely Starkman, Elliot Gilchrist Smith, Suzanne M. Dunn, Edmond Jason Tremblay, Arnstein & Lehr, Chicago, IL, Michael A. Stiegel, Michael Best & Friedrich, Chicago, IL, for defendants.

## ORDER

NORDBERG, Senior District Judge.

On March 12, 2001, the parties filed a Final Pretrial Order, and each side filed various motions in limine. The motions were then briefed and considered by Magistrate Judge Keys, who issued a 30-page memorandum opinion and order on April 12, 2001 (the "Order"). Each side filed objections to parts of the Order, and each side then filed a response. We now review these objections pursuant to Fed.R.Civ.P. 72(a), which provides that the district court shall modify or set aside any portion of the order found to be "clearly erroneous or contrary to law."

We have carefully reviewed the parties' objections and supporting briefs. Aside from the two objections discussed below, we agree with the rulings made by the Magistrate Judge in his Order. Specifically, we agree with the following: (1) the granting of defendant's motion to bar plaintiff's expert witness from testifying at trial (Order at 4–6); (2) the granting of defendant's motion to bar plaintiff from presenting undisclosed witnesses at trial (*id.* at 6–8); (3) the denial of defendant's motion to bar plaintiff from presenting lay opinions on whether he was properly terminated for misconduct under defendant's policies (*id.* at 14–18); and (4) the denial of plaintiff's motion to prevent defendant from contesting that plaintiff was a "participant" in the RIF plan (*id.* at 28–29).[1]

We see no need to engage in a lengthy explanation because we believe that the Magistrate Judge thoroughly analyzed these issues and we agree with the rationale given for the above rulings.[2] Briefly stated, the decision to exclude plaintiff's expert witness and the three undisclosed witnesses is fully justified based on plaintiff's failure to comply with various discovery requests. *See* Order at 4 (noting that plaintiff failed to respond to 7 separate requests to produce his expert for a deposition). Plaintiff has not offered any justification for these failures. With regard to

---

1. Plaintiff has not filed any objections to the Magistrate Judge's denial of the portion of plaintiff's motion in limine dealing with job performance review issues and other issues unrelated to either the exclusion of defendant's expert witness or to the exclusion of evidence that plaintiff was not a "participant" in the RIF plan. (Order at 21–28.)

2. We will not re-summarize the factual background in this case as it has been adequately set forth in the Magistrate Judge's Order and elsewhere.

the decision to allow plaintiff to present testimony about whether defendant followed its own policies in terminating plaintiff, we also agree with the Magistrate Judge's holding. This issue is potentially relevant to the issue of pretext. *See* Pls. 5/31/01 Resp. at 2–5 (discussing cases). Defendant's assertion that plaintiff's witnesses do not have the requisite knowledge to testify about defendant's policies can be better addressed in the context of their complete testimony at trial.

We now turn to the two aspects of the Order that we find should be modified based on the parties' objections—one made by plaintiff and one by defendant. First, we agree with plaintiff's objection to the Magistrate Judge's denial of plaintiff's motion to exclude the testimony of defendant's expert (Evelyn Freeman). *See* Order at 18–21. Plaintiff argued that defendant's expert witness should be barred from testifying because the defendant never produced a signed written report of that expert, as required by Fed.R.Civ.P. 26(a)(2)(B). In response, defendant does not dispute the fact that it never provided the report, nor does it contest the general proposition that it may not call this witness unless it can provide a substantial justification for why it failed to produce a report. *See generally Salgado v. General Motors Corp.*, 150 F.3d 735 (7th Cir.1998).

As its justification, defendant states that its expert was going to rebut the opinions offered by plaintiff's expert. Because plaintiff never provided its expert for a deposition, defendant's expert could not prepare a report. This justification would be convincing except for the fact that the Magistrate Judge has ruled that plaintiff's expert is barred from testifying due to plaintiff's failure to make him available for a deposition. The fact that defendant still intends to call its expert, despite the fact that plaintiff's expert will not be testifying, suggests that defendant's expert will be testifying to affirmative opinions unrelated to what plaintiff's expert might have said in deposition. Defendant's failure to provide a report describing these opinions cannot be justified simply because plaintiff failed to provide his expert for a deposition. For this reason, we will grant plaintiff's motion in limine and will bar defendant's expert from testifying.

Second, we agree with defendant's objection to the Magistrate Judge's partial denial of its motion in limine seeking to bar argument and evidence relating to plaintiff's claims for "lost opportunity" damages. *See* Order at 8–13. This issue relates to whether plaintiff may recover for earnings and benefits that he would have received if he had not been fired by defendant for allegedly pretextual reasons. Defendant filed a motion in limine arguing that plaintiff may not recover lost earnings and benefits because such damages are extra-contractual and therefore are not recoverable under ERISA, which only allows equitable relief. Defendant also argued that these damages were speculative.

The Magistrate Judge first concluded that lost earnings and benefits could, in theory, be recoverable as an equitable remedy under ERISA. *Id.* at 10. He then analyzed the argument that these damages were speculative. He noted that the analysis was hampered by the fact that it was not entirely clear what plaintiff's theory of damages was. He first considered the possibility that plaintiff was arguing that he would have been selected for termination pursuant to the RIF plan, would have been paid severance benefits, and then would have been rehired by defendant in a "second career." The Magistrate Judge concluded that a claim for these "second career" damages was speculative because it was not clear plaintiff would have ever been rehired and because

these damages could not legitimately be characterized as restitutionary or contractual. *Id.* at 12. Accordingly, he ruled that plaintiff could not recover for both severance benefits under the RIP plan and then also recover for lost earnings and benefits for nine-plus years of a second career at Sears. Plaintiff has not filed any objections to this portion of the Magistrate Judge's ruling and therefore this portion of the ruling stands unchallenged.

After concluding that plaintiff could not recover both severance benefits and the "second career" damages, the Magistrate Judge then considered the possibility that plaintiff was really trying to argue alternative theories of recovery. As the Magistrate Judge described it, either plaintiff would have been terminated pursuant to the RIF plan and would have received severance benefits or he would *not* have been selected for termination pursuant to the RIF plan and would still be an employee with Sears. *Id.* at 13. In effect, rather than seeking damages for a "second career" at Sears, this theory is based on the assumption that plaintiff simply would have continued on in his original position at Sears had he not been wrongfully terminated. Based on this theory, the Magistrate Judge concluded that plaintiff could recover damages for lost earnings at Sears.[3] To this extent, the Magistrate Judge denied defendant's motion in limine.

It is this latter half of the ruling that defendant now objects to. Defendant argues that this theory of damages is incompatible with plaintiff's claim under § 510 for interference of ERISA benefits.[4] Based on the current state of the record, we agree.

It is important to set out what plaintiff has alleged. Plaintiff has consistently described his claim in the following terms. Certain managers at Sears pretextually fired him on trumped-up charges of willful misconduct when the real reason they were firing him was to keep from paying him the severance benefits he would have received under the RIF plan. *See* Pls. 5/4/01 Objs. at 1–2; Pls. 5/31/01 Resp. at 4. Plaintiff has pointed to what he believes is suspicious timing. He was fired "just prior" to the implementation of the RIF plan in his department. *See* Pls. 5/4/01 Objs. at 1. Thus, as articulated by plaintiff, a fundamental premise of his claim is that, when the managers at Sears fired him, they believed that he would be a participant in the RIF plan. Without this premise, plaintiff's § 510 claim falls apart.[5]

In fact, defendant has attempted to develop a defense to the § 510 claim based on rebutting this very premise. Defendant believes that there is evidence to show that its decisionmakers had already considered and rejected plaintiff as a candidate for the RIF plan *before* they fired him for willful misconduct. In other

---

**3.** Plaintiff is seeking to recover lost earnings, lost pension value, lost profit sharing account value due to early liquidation, lost vacation pay, and lost merchandise discounts.

**4.** Section 510 of ERISA provides, in relevant part, that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ...." 29 U.S.C. § 1140. Section 510

provides the basis for federal jurisdiction in this case.

**5.** As noted above, a claim under § 510 is based on the assumption that the employer was acting for the "purpose of interfering" with the attainment of an ERISA benefit. Of course, a finding that the employer was not interfering with an ERISA benefit does not necessarily mean that the employer's decision was proper or justified in all respects. It just means that plaintiff cannot bring a successful § 510 claim.

words, why would Defendant go to the trouble of pretextually firing plaintiff in order to keep from paying him severance benefits when it would not have had to pay him such benefits? Plaintiff has responded to this line of argument by claiming that he had not been rejected for participation in the plan and that the decisionmakers therefore could have been motivated to fire him to avoid paying him benefits. The problem with plaintiff's alternative theory of damages, which rests on the notion that plaintiff would *not* have received benefits under the plan, is that it contradicts this basic premise to the § 510 claim for interference of benefits. In short, we do not see how plaintiff can maintain a successful § 510 claim if he cannot show that he would have been a participant in the plan.[6]

For this reason, we will grant defendant's motion in limine and will modify the Magistrate Judge's order accordingly. Plaintiff is barred from presenting evidence and argument relating to damages based on the theory that plaintiff would not have been participant in the RIF plan. To the extent that any of plaintiff's claimed damages, such as lost pension value, are not dependent upon this theory, plaintiff may still seek to recover them.

### CONCLUSION

For the reasons stated above, the Magistrate Judge's 4/12/2001 Memorandum Opinion and Order is modified in the following two respects: (1) plaintiff's motion in limine to exclude the testimony of defendant's expert (Evelyn Freeman) is grant-

ed; and (2) defendant's motion in limine to exclude evidence and argument relating to plaintiff's alternative damages theory (as described herein) is granted. The parties are directed to appear at a status hearing on August 2, 2001 at 3:30 p.m.

---

**6.** The only conceivable way we see that plaintiff could reconcile these contradictory points would be to argue that, even though Sears was trying to fire him for the specific purpose of avoiding having to pay him severance benefits, Sears was somehow mistaken in thinking that he was eligible for those benefits. This argument does not strike us as very per-

suasive, and we do not believe that plaintiff has pursued such a theory. However, to the extent that plaintiff develops evidence at trial to support such a theory, he may file a motion to reconsider this ruling, and we would consider his argument in the context of the complete record at trial.